QWEST COMMUNICATIONS INTERNATIONAL INC. and Qwest Communications Corporation, Appellants,

v.

AT&T CORP. and AT&T Communications of the Southwest, Inc., Appellees.

No. 03–98–00111–CV.

Court of Appeals of Texas, Austin.

Jan. 14, 1999.

Rehearing Overruled Feb. 19, 1999.

---

Claude E. Ducloux, Hill, Ducloux, Carnes & Clark, Austin, for Appellant.

Joseph Latting, Liddell, Sapp, Zivley, Hill & Leboon, L.L.P., Austin, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Qwest Communications International Inc. and Qwest Communications Corporation (together "Qwest") appeal from a district court order which denied both Qwest's motion to strike a previous order and Qwest's motion to determine that an agreement between Qwest on the one hand, and AT & T Corp. and AT & T Communications of the Southwest, Inc. (together "AT & T") on the other, is unenforceable. Because the district court's order is interlocutory and not appealable, we will dismiss the appeal for lack of jurisdiction.

## BACKGROUND

On December 12, 1997, AT & T filed suit against Qwest in district court alleging that on three separate occasions, while constructing its own fiber optic network, Qwest severed fiber optic cables of AT & T.[1] In its petition, AT & T sought a temporary restraining order, a temporary injunction, a permanent injunction, and damages for Qwest's alleged negligence. The district court, without notice to Qwest, issued a temporary restraining order requiring Qwest to refrain from engaging in certain construction that could further damage AT & T's cables, and set AT & T's application for a temporary injunction for hearing on December 18.

At the time of the hearing, the parties informed the court that they had resolved the matters set for hearing and were "requesting that the Court enter the following agreement, which shall be enforceable by contempt powers of this court or any other court of competent jurisdiction." The "agreement" was then read into the record. Its substantive terms essentially restrict excavation work and boring operations[2] by Qwest when engaged in construction in the vicinity of an existing AT & T cable, set forth

---

1. AT & T also sued SP Construction, Inc. and C & S Directional Boring Company, Inc. SP and C & S are not subject to the district court's orders at issue here and are not parties to this appeal.

2. Boring, for purposes of this case, is a construction technique used to install cable in areas where there are surface obstructions like rivers and roads.

procedures for Qwest to notify AT & T of its activities, compel meetings between Qwest and AT & T, require approval of Qwest's work plans by AT & T, and allow AT & T to have a site representative present during Qwest's operations in proximity to an AT & T cable. The agreement also dissolved the bond filed by AT & T to obtain the temporary restraining order and released AT & T and its surety. It specifically provided that it did not release Qwest from liability for prior actions and was neither a settlement of any claim for damages nor an admission of any liability for damages. Finally, the agreement expires three years from its date if not extended or modified. The district court apparently orally approved the agreement and requested it be reduced to writing, circulated for approval as to form, and returned to the court for signature.[3]

Following the hearing, AT & T forwarded to Qwest a draft of a proposed order which AT & T contends is an accurate representation of what had been orally presented to the court. Qwest, however, objected to the proposed order on the basis that the order omitted a term specifically agreed to on December 18 and contained a "unilateral change" to which Qwest had not agreed, and refused to sign. Qwest has never approved, as to form or substance, any *written order* embodying the terms of the December 18 agreement.

On January 22, 1998, AT & T filed a motion for contempt and sanctions alleging that Qwest had violated the December 18 agreement on 52 separate occasions. A show cause hearing was held on February 17 at which AT & T asked the court to (1) enter the order announced on December 18; (2) punish Qwest for violating it; and (3) sanction Qwest for its "contumacious, outrageous behavior." At the hearing, AT & T presented an "Agreed Order," which it asserted was a correct rendition of the December 18 agreement. Qwest objected to this order arguing that two paragraphs regarding bor-

ing operations were incomplete and did not accurately reflect the agreement between the parties. Over Qwest's objection, the court signed the order, noting that the language of the order was identical to that read into the record on December 18, but suspended enforcement of the objectionable boring provisions pending a future hearing, which the court set for February 25.

Qwest then moved to strike the February 17 order, to modify it, or to determine the parties had never entered into an agreement enforceable under Rule 11 of the Texas Rules of Civil Procedure.[4] At the February 25 hearing, the district court considered Qwest's motions as well as those of AT & T for contempt and sanctions and by order signed March 25 denied all of them. The district court also lifted its stay of the provisions relating to boring contained in the February 17 order. The March 25 order contains findings of fact and conclusions of law which reflect, *inter alia*, the district court's determination that the December 18 agreement was in fact an enforceable Rule 11 agreement. On appeal, Qwest asserts seven points of error challenging the February 17 order.

In response, AT & T contends in both its brief and by separate motion that the February 17 order is not an interlocutory appealable order,[5] and that this Court has no jurisdiction to entertain Qwest's appeal.

## DISCUSSION

We must first determine AT & T's jurisdictional complaint, as without jurisdiction we can go no further. Generally, appeals may be taken only from final orders or judgments. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). "A final judgment is one which disposes of all legal issues between all parties." *Id.* at 272 (citing *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1986)); *see also National W. Life Ins. Co. v. Walters*, 663 S.W.2d 125, 126 (Tex.

---

3. At the conclusion of the December 18 hearing the court stated:

Okay. With respect to the plaintiff's application for temporary injunction, judgment is rendered.

Schwartz [AT & T's counsel], you'll do the order. Pass it by Shaunessy [Qwest's counsel]

and discussion for forum [sic] and then you all will submit it to me.

4. *See* Tex.R. Civ. P. 11.

5. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a) (West Supp.1999).

App.—Austin 1983, no writ). An interlocutory order, however, "leaves something further to be determined and adjudicated in disposing of the parties and their rights." *Taliaferro v. Texas Commerce Bank*, 660 S.W.2d 151, 152 (Tex.App.—Fort Worth 1983, no writ) (citing *Kinney v. Tri–State Tel. Co.*, 222 S.W. 227, 230 (Tex.1920)). The parties agree, and we concur, that the district court's February 17 order is an interlocutory order. "Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction." *Stary v. DeBord*, 967 S.W.2d 352, 352 (Tex.1998); *see also Tipps*, 842 S.W.2d at 272. Qwest asserts that the February 17 order is a temporary injunction and therefore an interlocutory appealable order. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (West Supp.1999). AT & T, however, characterizes the order as one enforcing a "valid contract" (the December 18 agreement) and accuses Qwest of "creating the illusion that a temporary injunction is being appealed."

"The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a final trial of the case on its merits." *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (Tex.1961). The writ restrains the doing of certain acts during the pendency of the suit to which it is ancillary. *See Laredo Junior College Dist. v. Zaffirini*, 590 S.W.2d 535, 536 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.) (citing *Riggins v. Thompson*, 96 Tex. 154, 71 S.W. 14 (Tex.1902)). An order granting a temporary injunction must set the case for trial on the merits. *See* Tex.R. Civ. P. 683. The granting court must also fix the amount of security the applicant shall give before the writ will issue. *See* Tex.R. Civ. P. 684.

■ The February 17 order does not satisfy these traditional criteria of a temporary injunction. The order recites that the parties reached an agreement and asked the court to "enter" it. The order then sets

forth several provisions reflecting how Qwest will conduct excavation and boring activities when in the near vicinity of an existing AT & T buried cable. These provisions go beyond what is necessary to preserve the status quo that existed immediately prior to the filing of suit and do more than merely extend the terms of the previous temporary restraining order. While the temporary restraining order concerns AT & T's fiber optic line linking Austin with San Antonio and the remainder of South Texas and Mexico, the February 17 order applies to all of Qwest's operations in the United States. The order specifically dissolves the bond which AT & T posted as security to obtain the original temporary restraining order and releases AT & T and its surety. No provision is made for other security.[6] The order does not purport to be in effect during the pendency of the suit and does not set a trial date,[7] but is effective for three years from its date. Significantly, it is not made subject to further modification by the district court while the case is pending, but instead may only be extended or modified in a writing signed by the parties. Finally, the record before us does not reflect that a writ of injunction was issued in response to the district court's order.

■ While the December 17 order uses the words "desist and refrain," the use of such words alone does not compel a finding that the order is a temporary injunction. *See Sobel v. Taylor*, 640 S.W.2d 704, 708 (Tex.App.—Houston [14th Dist.] 1982, no writ) (use of word "enjoined" did not require order to be deemed temporary injunction).

It is clear that Qwest and AT & T on December 18 intended to resolve several of the issues pending before the district court. It is equally clear that they meant to leave other issues, such as past damages, for resolution at trial. AT & T contends, and the district court concurs, that an enforceable agreement was achieved. Qwest is adamant that no agreement ever existed and that if it

---

**6.** This Court has previously held that a *temporary injunction* is void for lack of a bond. *See Chambers v. Rosenberg*, 916 S.W.2d 633 (Tex.App.—Austin 1996, writ denied). As we hold that the February 17 order is *not* a temporary injunction, the lack of a bond does not affect its validity.

**7.** We note that a trial date was provided in the temporary restraining order.

did, Qwest withdrew its consent prior to rendition of the district court's order. *See S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 857 (Tex.1995) (party may revoke consent any time before judgment is rendered).

An appeal cannot be taken from an otherwise non-appealable order by seeking to disguise it as an injunction. *See Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co.,* 940 S.W.2d 150, 154 (Tex.App.—San Antonio 1996, no writ). An appeal from an interlocutory order granting or refusing a temporary injunction may not be used as a vehicle for carrying other non-appealable interlocutory orders and judgments to the appellate court. *Browne v. Bear, Stearns & Co., Inc.,* 766 S.W.2d 823, 824 (Tex.App.—Dallas 1989, writ denied); *see also Walters,* 663 S.W.2d at 126.

Qwest attempts to wrap in the cloak of a temporary injunction the district court's non-appealable interlocutory order enforcing an agreement compromising certain issues in dispute. This is impermissible.

We hold that the February 17 order is not a temporary injunction, but a non-appealable interlocutory order enforcing a compromise and settlement among the parties. In so holding, we do not reach and express no opinion regarding the proper characterization and enforceability of the December 18 agreement. Those issues must await the rendition of a final judgment.

### CONCLUSION

Because we find that the order that Qwest challenges on appeal is interlocutory and non-appealable, we dismiss this appeal for want of jurisdiction.

Elise Martin-Simon, L..T. Bradt, Houston, for Relator.

Gae C. Preston, Houston, for Real Party Interest.