**Opinion issued October 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-01015-CV

_____

**THE CITY OF HOUSTON, Appellant**

**V.**

**DOWNSTREAM ENVIRONMENTAL, L.L.C., Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-29293**

---

## MEMORANDUM OPINION

The City of Houston appeals from an interlocutory order denying its request to vacate a previously entered agreed order, which the City contends is a temporary injunction. We agree that it is a temporary injunction. Because it does not comply

with the requirements of the Rules of Civil Procedure, it is void. Accordingly, we reverse.

## Background

For more than four years, the parties in this case have been embroiled in a dispute relating to Downstream Environmental, L.L.C.'s wastewater treatment facility. In May 2010, an off-specification discharge into the City's sewer system led to the temporary shutdown of Downstream's facility. Approximately a year later, Downstream stopped paying for wastewater services and sued the City for damages arising from the shutdown. Based on an analysis of wastewater samples, in October 2011 the City informed Downstream that its cost to discharge wastewater into the sewer system would be increased by approximately 700%. Downstream argued that this rate increase effectively would put it out of business. While Downstream sought administrative review of the rate increase, the litigation between the parties continued.

In April 2012, the City filed a plea to the jurisdiction, arguing that it was immune from suit under the doctrine of governmental immunity. Downstream responded that the City had engaged in a proprietary function by offering wastewater treatment services to industrial users, and therefore it was not immune from suit. Over the next several months, Downstream responded to the plea, the City filed a reply, the trial setting was continued, and Downstream moved for

2

summary judgment on the question of whether the City was engaged in a proprietary or governmental function.

Meanwhile, Downstream continued to seek administrative review of its complaints regarding the rate increase and sampling procedures. In September 2012 an administrative hearing was held, but the rate increase issue was deferred to the trial court. In late October 2012 and without any resolution of the dispute regarding the rate increase, the City sent Downstream a "Turn Off Notice," stating that the account was "seriously past due" and the current balance exceeded $200,000. The notice advised Downstream that service was scheduled to be disconnected on November 7, 2012.

In early November 2012, Downstream supplemented its pleadings to request temporary and permanent injunctive relief. It requested that the court require the City to take specific actions in regard to sampling of wastewater, to apply specified discharge rates, and to take "no further administrative action (such as filing a lien or shutting off wastewater services) without first obtaining a Court Order."

On November 5, 2012, the district court granted a temporary restraining order. The TRO required that "wastewater services shall remain on at . . . Downstream's place of business." It did not grant any of Downstream's other requested relief. That same day, the court heard arguments on the City's plea to the jurisdiction.

3

A temporary injunction hearing was scheduled for November 19, 2012, but that hearing was continued at the City's request. Pursuant to a joint motion of the parties, the November 5 TRO was "continued until the Court rules on the temporary injunction."

The trial court later denied the City's plea to the jurisdiction, and on November 30, 2012, the City filed a notice of appeal from that interlocutory order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2014) (permitting interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001").

On December 3, the parties filed another joint motion to continue the temporary injunction hearing, and the following day another order was entered, which again "continued" the TRO "until the Court rules on the Temporary Injunction." Then on December 13, the trial court held a hearing on Downstream's application for temporary injunction. Downstream argued that the City intended to discontinue wastewater services based on an allegedly past-due bill which was the subject of the parties' dispute in the trial court, and that it was seeking a temporary injunction to prevent the discontinuation of wastewater services to its facility. The City objected to proceeding with the hearing because its interlocutory appeal was pending, though it did not specifically argue that the proceedings were automatically stayed. The trial court asked the parties whether an agreement could

4

be reached. The City insisted on some payment, and Downstream conceded that some payment was due though it disputed the amount. The court then recessed the hearing, and the parties reached an agreement as a result of off-the-record discussions. The court then read the parties' agreement into the record and signed the parties' "Rule 11 Agreement and Agreed Order." Among other things, the agreed order required that Downstream pay $7,500 to the City toward its wastewater bill and provided that the City would keep Downstream's wastewater services operational until further order of the court or until a further written agreement of the parties. In addition, the order noted that the case was set for trial on February 4, 2013.

Downstream paid the $7,500 specified in the agreed order. However, the case did not proceed to trial on February 4, 2013. Downstream continued using the City's wastewater services. However, consistent with its litigation position that it had a credit with the City due to prior overpayment, Downstream did not make any payments in addition to the $7,500 required by the agreed order. With its first interlocutory appeal (from the denial of the jurisdictional plea) still pending, on October 4, 2013 the City filed a motion in the trial court to vacate the December 2012 Rule 11 Agreement and Agreed Order. The motion asserted that since the entry of that order, Downstream had incurred additional charges of more than $80,000 yet had paid nothing more than the $7,500 required by the order. At

5

that time, the City alleged that Downstream owed in excess of $300,000. The City argued that it had "no obligation to provide Downstream with free wastewater service," it would have disconnected Downstream's industrial service months earlier if not for the agreed order, and it no longer agreed with the terms of the agreed order. The motion did not refer to the agreed order as a temporary injunction.

At the hearing on the motion to vacate the December 2012 agreed order, the argument centered on the applicability of an automatic stay arising from the City's interlocutory appeal of the denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(b), (c). The transcript showed that both the court and the parties believed such a stay was in effect. During the hearing, neither the parties nor the court referred to the December 2012 agreed order as an "injunction" or discussed whether it was void for failure to comply with the formal requirements for an injunction in the Rules of Civil Procedure. *See* TEX. R. CIV. P. 681–684. The trial court denied the City's motion to vacate the agreed order, and the City filed this interlocutory appeal.

**Analysis**

On appeal, the City characterizes the December 2012 agreed order as a temporary injunction and argues that its motion to vacate was, therefore, a motion to dissolve a temporary injunction. Thus the City argues that the trial court's denial

6

of its motion to vacate was an appealable interlocutory order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4). Downstream contends that the December 2012 order was not an injunction, but rather a Rule 11 agreement. Downstream further contends, therefore, that the order denying the City's motion to vacate is not an appealable interlocutory order, and it urges us to dismiss this appeal for want of jurisdiction.

## I.     Interlocutory appellate jurisdiction

We first determine if we have jurisdiction over this interlocutory appeal. This is a question of law which we review de novo. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Ordinarily, Texas appellate courts have jurisdiction only over final judgments. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 92 (Tex. 2012). An exception to this general rule exists when a statute authorizes an interlocutory appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). The Civil Practice and Remedies Code provides for an interlocutory appeal from an order that "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4). Thus we must determine whether the December 2012 order was a temporary injunction.

A temporary injunction is an extraordinary remedy, the purpose of which is "to preserve the status quo of the litigation's subject matter pending a trial on the

merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An applicant seeking a temporary injunction must plead and prove: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* The applicant is not required to establish that he will prevail trial on the merits; rather, the only question before the trial court is whether the applicant is entitled to preservation of the status quo in the meantime. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Rules of Civil Procedure 683 and 684 set forth the formal requirements for an order granting a temporary injunction. Rule 683 provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

> Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

8

TEX. R. CIV. P. 683. Rule 684 requires that an order granting a temporary injunction "fix the amount of security to be given by the applicant." TEX. R. CIV. P. 684.

This case is materially similar to *Qwest Communications Corp. v. AT&T Corp.*, 24 S.W.3d 334 (Tex. 2000), in which AT&T sued Qwest for damages to its fiber optic cables, and it also sought a temporary injunction. 24 S.W.3d at 335. At the hearing on AT&T's application for a temporary injunction, the parties informed the trial court that they had reached an agreement and read the agreement into the record. *Id.* The agreement required Qwest to notify AT&T of construction near AT&T's underground facilities and to conduct certain monitoring during construction activities. *Id.* The agreement "dissolved the previously granted temporary restraining order bond, left open claims for damages, and expired three years from the date it became effective unless extended or modified in a signed writing by the parties." *Id.* At the conclusion of the hearing, the trial court stated that judgment was rendered with respect to the application for temporary injunction. *Id.* The court instructed AT&T's counsel to prepare a written order, but the parties could not agree to the terms of a written order to be submitted to the court. *Id.* The trial court later "signed an order following the terms recited into the record at the temporary injunction hearing." *Id.*

Qwest filed an interlocutory appeal. *Id.* The court of appeals noted that the order did not satisfy the procedural requirements for issuance of a temporary injunction. *Qwest Commc'ns Int'l Inc. v. AT&T Corp.*, 983 S.W.2d 885, 888 (Tex. App.—Austin 1999), *rev'd*, *Qwest*, 24 S.W.3d 334. For example, it exceeded what was necessary to preserve the status quo that existed immediately prior to trial, made no provision for security, and did not set a date for trial. *Id.* The court of appeals thus concluded that the order was not a temporary injunction but rather a "non-appealable interlocutory order enforcing an agreement compromising certain issues in dispute." *Id.* at 889.

The Supreme Court reversed, holding that whether an order complies with the formal, procedural requirements is not determinative of whether the order is a temporary injunction because it is the character and function of an order, not matters of form, that determine its classification. *Qwest*, 24 S.W.3d at 336–38. The Court noted that the order restricted Qwest's conduct, required it to provide notice and conduct monitoring during certain construction activities, was entered upon AT&T's request, was effective immediately, and operated during the pendency of the suit. Accordingly, the Court concluded that the order was a temporary injunction. *Id.* at 336–37.

In this case, Downstream sued the City for damages to its facility and in regard to a dispute over rates charged for discharging water into the City's sewer

system. Downstream sought to prevent the City from discontinuing wastewater services. It first obtained a temporary restraining order. At the hearing on the application for a temporary injunction, in response to a specific question from the trial court, Downstream affirmed that it was seeking a temporary injunction to prevent the City from discontinuing wastewater services. After off-the-record discussions, the parties informed the court that they had reached an agreement, and the court read the agreement into the record. The court and the parties referred to the agreement as both a "Rule 11 agreement" and an "agreed order." The agreement required the City to continue providing wastewater services to Downstream's facility and to undertake and share the costs of additional sampling and testing. The agreed order provided that it "is in effect until further written agreement of the parties or Order of this Court." As in *Qwest*, the order here restricted the City's conduct, required it to undertake certain actions, was entered after a hearing on Downstream's request for a temporary injunction, was effective immediately, and operated during the pendency of the suit. Accordingly, we conclude that the December 2012 order functions as a temporary injunction for purposes of determining our interlocutory appellate jurisdiction. *See Qwest*, 24 S.W.3d at 336–37.

Downstream argues that the December 2012 order was an agreement pursuant to Rule 11 of the Rules of Civil Procedure, and that this court lacks

11

jurisdiction to review an order denying a motion to vacate such an agreement. Rule 11 provides that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Although the Supreme Court has "generally treated Rule 11 agreements as separate and distinct from agreed judgments entered thereon," it recently held that "nothing in the rules of procedure prohibits a Rule 11 agreement from being, itself, an agreed judgment, so long as the agreement meets the requirements for a final judgment." *In re Vaishangi, Inc.*, No. 13-0169, 2014 WL 2535996, at *2 (Tex. June 6, 2014). Likewise, nothing in the rules of procedure prohibits a Rule 11 agreement from also being an agreed temporary injunction. Here the parties reached an agreement pursuant to Rule 11, and they also agreed to entry of an agreed order. We have already concluded that the order was a temporary injunction; the fact that the document also satisfied the requirements of Rule 11 does not preclude it from also being classified as a temporary injunction subject to interlocutory appellate review. *See Qwest*, 24 S.W.3d at 336–38; *cf. Vaishangi*, 2014 WL 2535996, at *2.

Having concluded that the December 2012 order was a temporary injunction, we also conclude that the order denying the City's motion to vacate was an order denying a motion to dissolve a temporary injunction. *See Qwest*, 24

S.W.3d at 336–38. Thus, we have jurisdiction over the interlocutory appeal from that order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4).

## II.     Validity of temporary injunction order

The City argues that the agreed temporary injunction order is void because it does not strictly comply with Rules 683 and 684. Specifically, the City argues that the order does not set out the reasons for its issuance, does not set a bond to be given by Downstream, and does not contain a valid trial setting because the trial setting in the order has long since passed.

Rule 683 requires that an order granting a temporary injunction "set forth the reasons for its issuance" and set the cause for trial on the merits. TEX. R. CIV. P. 683; *see Qwest*, 24 S.W.3d at 337; *Conlin v. Haun*, 419 S.W.3d 682, 685–86 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Rule 684 requires that in an order granting a temporary injunction, "the court shall fix the amount of security to be given by the applicant." TEX. R. CIV. P. 684; *see Qwest*, 24 S.W.3d at 337. "These procedural requirements are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved." *Qwest*, 24 S.W.3d at 337; *see InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (stating that requirements of Rule 683 are mandatory and must be strictly followed); *Conlin*, 419 S.W.3d at 686 (aggregating cases).

"The trial court has broad discretion to grant or deny a motion to dissolve a temporary injunction." *Conlin*, 419 S.W.3d at 686; *accord Tex. State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 11–12 (Tex. App.—Houston [1st Dist.] 1994, no writ). "A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *Conlin*, 419 S.W.3d at 686 (citing *Intercontinental Terminals*, 354 S.W.3d at 892). But a trial court has no discretion to deny a motion to dissolve a void temporary injunction. *See id.* at 686–87. Whether a temporary injunction is void for lack of compliance with the rules of civil procedure is a question that may be addressed for the first time on appeal. *See Courtlandt Place Historical Found. v. Doerner*, 768 S.W.2d 924, 926 (Tex. App.—Houston [1st Dist.] 1989, no writ) (holding that complaining party need not "point out the facial inadequacy of the temporary injunction order to the trial court" before raising such a challenge on appeal); *see also 360 Degree Commc'ns Co. v. Grundman*, 937 S.W.2d 574, 575 (Tex. App.—Texarkana 1996, no writ) ("We are persuaded that the great weight of authority . . . militates against validating the defective order by means of waiver."); *Fasken v. Darby*, 901 S.W.2d 591, 593 (Tex. App.—El Paso 1995, no writ) (rule that injunction is void if it fails to identify harm that will be suffered if it does not issue "operates to invalidate an injunction even when the complaining party fails to bring the error to the trial

court's attention."); *cf. Qwest*, 24 S.W.3d at 337 (parties did not argue that injunction was void in trial court or court of appeals because dispute centered on whether document was a temporary injunction or a Rule 11 agreement).

The agreed temporary injunction in this case did not set forth the reasons for its issuance or fix the amount of security to be given by the applicant, Downstream. Accordingly, the injunction is void and must be dissolved. *See Qwest*, 24 S.W.3d at 337; *InterFirst Bank*, 715 S.W.2d at 641 (stating that requirements of Rule 683 are mandatory and must be strictly followed); *Conlin*, 419 S.W.3d at 686.

We sustain the City's first issue. Because we have concluded that the temporary injunction order must be dissolved, we do not reach the City's other issues challenging the order.

## Conclusion

We reverse the trial court's order denying the City's motion to vacate and remand with instructions to the trial court to dissolve the December 2012 Agreed Order.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.